**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **STEVEN CLARKE,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | CIVIL NO. 05-177-P-H |
| | ) | |
| **MICHAEL BLAIS, ET AL.,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**ORDER ACCEPTING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

In this case, the plaintiff seeks damages from Knox County jail personnel for events that occurred while he was in pre-trial detention. He claims that jail guards subjected him to excessive force.[1] He also claims that the physician's assistant who provided medical services at the jail failed to give him proper treatment for his hepatitis C (he wanted to be started on anti-viral therapy) and hypoglycemia, and failed to prescribe Seroquel for his mental health issues. He has asserted both federal and state claims.

This is a troubling case procedurally. The plaintiff is a prisoner with medical and mental health issues. He has requested the court to appoint a

---

[1] The Amended Complaint does not mention failure to treat the injuries he suffered in the alleged assault. That issue is raised for the first time in the plaintiff's Opposition to the Defendants' Motion for Summary Judgment. Therefore, such allegations cannot serve as an independent basis for relief but only as evidence of damages should the excessive force claim succeed.

lawyer to represent him several times during this lawsuit and each time has been turned down, including during the summary judgment proceeding. Although the court is authorized to request a lawyer to represent an indigent prisoner under 28 U.S.C. § 1915(e)(1), there are no funds appropriated to pay a lawyer or even to reimburse a lawyer's expenses. As a result, such appointments occur very rarely,[2] being saved for cases that appear to have some chance of success. In this case, the Magistrate Judge concluded that the case was not legally or factually complex, an assessment with which I agreed. She therefore refused appointment of a lawyer for the early stages (and I upheld her decision on appeal), reserving judgment on whether appointment would be appropriate if the case were to proceed to trial.

After a removal of a default by one of the defendants, discovery, and various disputes that the Magistrate Judge had to resolve, the defendants all moved for summary judgment. It is not uncommon to hear discussions at lawyers' meetings about the complexities of the summary judgment rules, how they trip up lawyers and the dire consequences that ensue. It should not be surprising, then, that an unrepresented litigant might find those rules challenging.[3] That is what

---

[2] DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991) ("exceptional circumstances . . . such that a denial of counsel was likely to result in fundamental unfairness impinging on his due process rights").

[3] Indeed, the First Circuit cases that support denying the request for appointed counsel involved trials where the plaintiff succeeded in presenting his version of the facts to the factfinder even though without a lawyer. DesRosiers, 949 F.2d at 23; Cookish v. Cunningham, 787 F.2d 1 (1st Cir. *(continued on next page)*

2

happened here. The plaintiff responded to the defendants' two motions for summary judgment and even filed an amended response to one of them when that defendant's reply revealed that there might be difficulties with the plaintiff's initial response. But he clearly did not follow the local rules, and as a result the Magistrate Judge treated as fact all the defendants' assertions. In doing so, she followed the Local Rule precisely, because a failure properly to counter the defendants' supported statements of material facts determines what the facts are. Local Rule 56(f). From there, it was just a short step to recommending that the defendants be granted summary judgment because, on those facts, the law was clearly in their favor.

With respect to the physician's assistant and with respect to the medical treatment that the plaintiff received, I **ACCEPT** the Magistrate Judge's recommendation of judgment for the defendants because, even if I entertain everything that the plaintiff has filed and overlook his Rule violations, it is clear that he has no viable claim.[4]

---

1986). In some respects, resisting summary judgment under the Rules as they have evolved is even more difficult for an unrepresented plaintiff than presenting an uncomplicated story to a factfinder.

[4] The plaintiff recognizes that the standard of liability is deliberate indifference to serious medical needs. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). But his claims boil down to disagreement with the chosen course of treatment, and that is not the basis for a constitutional claim. The physician's assistant decided not to embark upon the anti-viral therapy for the hepatitis C because the plaintiff was a pre-trial detainee subject to further movement among facilities, and there is authority (including the Federal Bureau of Prisons Guidelines for Prevention and Treatment of Viral Hepatitis of October 2005) that such treatment should ordinarily not be started unless it can be completed. In treating the plaintiff, the
*(continued on next page)*

But the excessive force claim is different.[5] The plaintiff filed an affidavit with his Amended Complaint that should have made clear there could be no successful motion for summary judgment against him on his excessive force claim, even based upon qualified immunity for the officers. His sworn version of the events, if accepted as true, would foreclose qualified immunity. In addition, the defendants filed with their motion for summary judgment the plaintiff's own deposition where his sworn testimony directly contradicts the officers' affidavits of what happened. This is hardly "evidence in the wings that the non-movant wants the opportunity to present to a jury." Defs.' Response to Pl.'s Objection to Recommended Decision at 6 (Docket Item 109). With the plaintiff's deposition in hand, I am baffled that the defendants' lawyer even filed a summary judgment motion on the excessive force claim or that he could "contend[ ] there is no

---

physician's assistant consulted an outside gastroenterologist and there was monitoring of the plaintiff's liver function. The physician's assistant properly treated the hypoglycemia and the plaintiff does not pursue that issue in his objection to the Recommended Decision. Seroquel, an anti-psychotic drug, was the recommendation of a counselor/social worker at an outside clinic. His note stated: "[Client] wants [prescription] for Seroquel to help him stay calm. Given his volatility and impulsive nature, it would seem prudent to prescribe this medicine, despite the client's [history] of manipulation." The note stated that the counselor had consulted a psychiatrist. Given the lack of enthusiasm in the endorsement of Seroquel, it was hardly deliberate indifference for the physician's assistant not to prescribe the medication the plaintiff wanted. At a clinic evaluation two days later with the same counselor, the recommendation was not renewed.

[5] I do not agree with the Magistrate Judge that even if I credit the plaintiff's account of what happened, "the undisputed end result of the fracas strongly supports the conclusion that the force applied was objectively reasonable." Recommended Decision at 14 (Docket Item 101). The plaintiff's version of the facts, if believed, would not support that conclusion.

4

genuine issue of material fact to be tried." Local Rule 56(b).[6] Here are excerpts from the plaintiff's deposition (under questioning by the defendants' lawyer):

> Q. At any point in time, did you slam your hands on the booking desk counter?
> A. I placed my hands on the counter.[7]
> Q. Did you lunge forward with both arms towards where Blais was standing?
> A. No.
> . . . .
> Q. At any point, did you attempt to resist or stop the process?
> A. No, no, I did not.
> Q. At some point, did the officers that were – I'm assuming from what you're saying, you continued to walk and you're on your way to the cell and they're not having any problems getting you there; correct?
> A. There was no problem.
> . . . .
> Q. The question is: After you closed the cell door to 126, Blais is escorting you into the cell. Does he move you aside so he can open the door to 126?
> A. No. He held onto me and he opened the door and then pushed me into the cell.
> Q. At that time, did you charge at him?
> A. No.
> Q. When he opened the cell door and put you in, Mank, Dearborn, Stone, Smith and Gracie are all there, correct?
> A. At that point, yes.
> Q. They put you in the cell, you don't charge at them but they went in and restrained and handcuffed you, correct?
> A. No, they tackled me after I was in the cell.
> Q. So they put you down into a prone position and applied restraints to you, correct?
> A. Explain prone.

---

[6] It could only have been in the hope that the plaintiff would default procedurally.

[7] In his Affidavit, the plaintiff says: "I slapped my hands down on the counter and said 'just forget it then,' as I started to turn to walk back to the de-tox cell . . . ." Pl.'s Aff. ¶ 1 (Docket Item 20-4).

5

> Q. Down on the ground.
> A. They tackled me and I was on the ground, yes.
> Q. And they cuffed you and put leg irons on you too?
> A. No.
> Q. Four point restraints or just two point?
> A. Not at that point. That's when the assault happened, when I was on the floor.
> Q. Say that again.
> A. I was on the floor, and I was being choked and hit and kicked and kneed and sworn at and then I was cuffed.
> Q. Who was choking you?
> A. Mank.
> Q. And who was kicking you?
> A. That would be Blais and Stone.
> Q. What was Gracie doing?
> A. I heard Blais tell her to put the cuffs on, she was trying, but they –
> Q. Were you resisting?
> A. No. They had my arms twisted in so many different directions, and they couldn't bring my arms together because they were wrestling each other.
> Q. At any point in time, did you resist?
> A. No.
> Q. Did you ever refuse to go into the cell?
> A. No.
> Q. Did you ever do anything that could be considered to be an aggressive action towards the corrections officers?
> A. No.

Clarke Dep. 17:14-23:6 (Docket Item 67). Obviously, the defendants dispute this version of what occurred,[8] and ultimately a factfinder may disbelieve the plaintiff,

---

[8] According to the defendants:
> 10. When Smith and Gracie took hold of Clarke's arms, Clarke resisted and refused to move. Clarke shook free of the two officers and lunged towards the booking desk where he slammed his hands down on the desk. *Blais Aff. ¶ 5.*
> 11. As Blais got up and began moving around the Booking Desk,

*(continued on next page)*

6

but this testimony under oath by a competent witness creates a genuine issue of material fact on whether excessive force was used and whether qualified immunity is available as a defense.

We enforce the summary judgment rules strictly against a lawyer, or against a litigant who knowingly chooses to proceed without a lawyer and therefore takes the risk of not understanding the requirements. But this plaintiff asked several times for legal assistance and could not obtain it. Reading the documents he did file makes clear that he was trying desperately to comply.

---

Clarke then lunged towards where Blais was standing. *Blais Aff. ¶ 6.*

12. In response to Clarke's actions, Sgt. Blais grabbed Clarke and tried to assist Officers Smith and Gracie in escorting Clarke to his cell. *Blais Aff. ¶ 7.*

13. Clarke resisted and refused to comply with orders to stop resisting, resulting in a request being made over the radio for assistance from other officers in subduing Clarke and getting him into his cell. *Blais Aff. ¶ 8.*

14. In response to the radio call, Officers Michael Mank, Matthew Dearborn and Michael Stone arrived and assisted with restraining inmate Clarke. *Blais Aff. ¶ 9; Butler Aff. 8, Exhibits 2-4.*

15. Attempts to place Clarke in cell 126 so that he could cool down were unsuccessful, as when officers got Clarke to the cell door, Clarke was able to shut the door to stop the officers momentum. *Blais Aff. ¶ 10.*

16. Sgt. Blais pushed Clarke to the side of the door, and was then able to open the door to Cell 126. *Blais Aff. ¶ 11.*

17. While Blais was opening the cell door Clarke was released by the other officers, at which time Clarke charged at Blais. *Blais Aff. ¶ 12.*

18. Officers Mank, Dearborn, Stone, Smith and Gracie assisted Clarke to the floor and restrained him, at which time Sgt. Blais placed handcuffs on Clarke. *Blais Aff. ¶ 13.*

19. Clarke was placed in a cell in restraints. *Blais Aff. ¶ 14.*

Defs.' Statement of Material Facts ¶¶ 10-19 (Docket Item 67-1).

What happened was this. On the excessive force claim, the defendants presented the Magistrate Judge with a motion for summary judgment and a separate statement of material facts accompanied by supporting affidavits, exhibits and the plaintiff's deposition transcript. The plaintiff responded with an "Opposition" that included his version of the facts, references to paragraph numbers of a document that he did not file, "P.S.M.F." (Plaintiff's Statement of Material Facts?), and exhibits that he did file. He did not mention either his affidavit or his deposition in the opposition. The plaintiff's violations of Local Rule 56 were the failure to file whatever document "P.S.M.F." was referring to, and the failure to refer specifically (in what he did file) to his affidavit attached to the Amended Complaint and to his deposition testimony attached to the defendants' statement of material facts.

The obligations of the court in such circumstances are not well defined. On a motion to dismiss for failure to state a claim, the Supreme Court has said that an unrepresented plaintiff's complaint is held to "less stringent standards" than a pleading drafted by a lawyer. Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). The Supreme Court has not had occasion to apply that principle to summary judgment practice. The circuit courts are divided, some requiring special notice to unrepresented litigants about what is required to oppose a summary judgment motion, see, e.g., Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985); McPherson v. Coombe, 174 F.3d 276 (2d Cir. 1999), and others holding the

unrepresented plaintiff strictly to the Rules, see, e.g., Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992).[9]  The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read "liberally." Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988); Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir. 1980). But it has also enforced Fed. R. Civ. P. 56(e)'s requirement that an unrepresented plaintiff's opposition "set forth specific facts showing that there is a genuine issue"—at least once he is put "on clear notice of the rule and the deficiencies of his initial response." Mas Marques, 637 F.2d at 27; accord Posadas, 856 F.2d at 401 ("at least when the litigant becomes aware that specific facts must be provided to defeat a motion for summary judgment").[10]  Here, these defendants did not place the plaintiff on notice of the inadequacies of his initial response. (Unlike the physician's assistant, these defendants did not file a reply to the plaintiff's opposition to their motion.)  He learned that his opposition to their motion was procedurally insufficient only when he received the adverse

---

[9] For a summary of the caselaw see Note, Pro Se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?, 90 Ky. L.J. 701 (2001).

[10] These cases support a decision like Fazzi v. Flannery, No. 03-cv-104, 2004 U.S. Dist. LEXIS 4739 (D.Me. Mar. 23, 2004), where the court treated the defendant's facts as admitted because the plaintiff filed no response at all to their motion.  The First Circuit has also said in a different context that unrepresented litigants are not "entitled to extra procedural swaddling," but it did so in the context of a litigant who consciously chose to proceed without a lawyer, Eagle Eye Fishing Corp. v. United States Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994), not the case here where this plaintiff has requested a lawyer several times.

Recommended Decision.  Therefore, a "liberal" reading of his papers is appropriate.[11]

I do not suggest that a judge or magistrate judge has an obligation to scour the record every time a plaintiff requests a lawyer and opposes a summary judgment motion.  Our Local Rule 56 was developed in response to a First Circuit suggestion, Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir. 1983), so that the judges and magistrate judges would not have to search the record to uncover factual disputes and instead could rely on what the parties bring directly to our attention.  Often the papers in prisoners' complaints are handwritten, disorganized and difficult to read, understand or fit into legal frameworks.  Judges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented plaintiff or devoting an excessive portion of their time to such cases.[12]  (Most prisoner complaints are doomed to failure in federal court.  Although the prisoner may have what he believes to be a justified grievance,

---

[11] In fact, both his affidavit and his deposition meet Fed. R. Civ. P. 56(e)'s requirements for the excessive force claim (personal knowledge, admissible evidence, competent witnesses, specificity).  But they were not specifically mentioned in his opposition, and he failed to meet the requirements that Local Rule 56(c) adds.

[12] Note that the Local Rule states:
> The court *may* disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Local Rule 56(f) (emphasis added).  This provision is clearly permissive, and does not *prohibit* a
*(continued on next page)*

10

seldom does it rise to a constitutional right violation that would entitle him to relief.)  But we must also respect the principle that a liberal reading is appropriate, at least until the unrepresented plaintiff is notified of his deficiencies.

What makes this case distinct is the following:  the plaintiff made very clear in his response to the motion (his "Opposition") the precise nature of his disagreement with the officers' version of what happened; the affidavit filed with the Amended Complaint supported the plaintiff's version and demonstrated from the outset that there was a competent witness (the plaintiff himself) with sufficient admissible evidence to allow the plaintiff to get to a factfinder on his excessive force claim, whatever might develop in discovery (unless he were to recant his story); the plaintiff was not someone who chose to proceed without a lawyer, thereby risking voluntarily the consequences of his ignorance of the rules, but instead requested appointment of a lawyer repeatedly; the plaintiff has mental and medical issues; the defendants confirmed for themselves during discovery that there was a genuine issue of material fact on the excessive force claim by taking the plaintiff's deposition and asking him about it, and they presented that entire deposition to the court as part of their motion for summary judgment, on notice that the plaintiff's testimony from the deposition and the affidavit created a genuine issue of material fact; and the Magistrate Judge was

---

judge from looking beyond the specific citations.

aware (as am I) of the affidavit (it would be difficult to decide a motion for summary judgment without reading the Amended Complaint, which included the affidavit).[13] No record scouring was required. Although there may be occasions where a plaintiff's failure of the sort that occurred here would unfairly prevent a meaningful defendants' reply, see Sirois v. Prison Health Services, 233 F. Supp.2d 52, 55 & n.2 (D. Me. 2002), this is not such a case. Here, there is a clear credibility conflict between what the plaintiff says happened and what the defendants (particularly Sergeant Blais) say happened. The issue concerns a material fact. A defendant's reply cannot alter that.

I **REJECT** the Magistrate Judge's recommendation that summary judgment be entered on the federal excessive force claim in favor of those defendants involved in the incident: Michael Blais, Rebecca Gracie, Michael Mank, and Mike Stone.[14] Instead, their motion on that claim is **DENIED**.[15] On the other hand, there is no evidence that the supervisory defendants were involved in the events or that there was a policy or custom of excessive force and therefore I **GRANT**

---

[13] The Magistrate Judge referred to the affidavit in her Recommended Decision, but found it inappropriate to use its contents because of her interpretation of the Local Rule requirements.
[14] The plaintiff's affidavit in support of his complaint says that the defendant Kathy Carver "was standing in the door way watching." Pl.'s Aff. at ¶ 4 (Docket Item 20-4). But his deposition makes no mention of her. The Recommended Decision notes that the plaintiff failed to "mention [] what, if anything, Kathy Carver . . . ever did to cause harm [to him]." Recommended Decision at 11 n.4. The plaintiff does not address the issue of Carver's liability in his objection to the Recommended Decision. I conclude that he has abandoned any claim against her and therefore **GRANT** summary judgment as to the defendant Kathy Carver.
[15] The plaintiff now argues only his federal claims, Objection to Proposed Decision at 1 (Docket Item 103-1), following the Magistrate Judge's recommendation that I reject his state law claims. *(continued on next page)*

summary judgment as to the supervisory defendants (Richard Robbins, Daniel Davey and Todd Butler).[16]

## CONCLUSION

Summary judgment shall be **ENTERED** on behalf of the defendants Jonathan Coggeshall, Richard Robbins, Daniel Davey, Todd Butler and Kathy Carver on all the federal and state claims.  It shall also be **ENTERED** on behalf of the other defendants with respect to any medical treatment claims and any state law claims. It is otherwise **DENIED**.

**SO ORDERED.**

**DATED THIS 12TH DAY OF FEBRUARY, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

Summary judgment is therefore **GRANTED** to all defendants on the state law claims.

[16] The plaintiff makes a Rule 56(f) argument against summary judgment on the premise that the Magistrate Judge did not order certain witnesses to go to a particular lawyer's office to sign affidavits.  Pl.'s Objection to Order on Mot. to Compel at 3-4 (Docket Item 108-1).  Four of the witnesses in question were Mark Smith, Michael Mank, Rebecca Gracie and Mike Stone, all allegedly involved in the excessive force claim.  Since the plaintiff was present for the use of force, he was competent to submit his own affidavit, and did not need their affidavits.  Thus, he had no basis for Rule 56(f) relief on that claim.  He also sought affidavits from Tammy Hayden Hilt, Michelle Roy Nash, Cindy Gardner and Jay Costigan.  None of these people is mentioned in the plaintiff's complaint, affidavit or deposition.  I cannot see how their affidavit(s) could have created a genuine issue of material fact on the medical treatment claims and supervisory defendant claims that I have resolved against the plaintiff.  I also **OVERRULE** the plaintiff's objection to the Magistrate Judge's denial of his motion to compel.  The plaintiff complains that the Clerk's Office returned  his reply memorandum to him stamped "Refused" (presumably for lack of adequate postage) and that the Magistrate Judge ruled before he successfully filed his reply memorandum.  I have now read all the materials the plaintiff wanted to file, and the Magistrate Judge's decision on the motion to compel was clearly correct.